DONNA M. WITTIG, ESQ.
Nevada Bar No. 11015
E-mail:  dwittig@nevadafirm.com
HOLLEY, DRIGGS, WALCH,
PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:     702/791-1912

DAVID H. BECKER, ESQ., *Pro Hac Vice*
Oregon Bar No. 081507
E-mail: davebeckerlaw@gmail.com
LAW OFFICE OF DAVID H. BECKER, LLC
833 SE Main Street # 302
Portland, OR 97214
Telephone: (503) 388-9160

ERIN MADDEN, ESQ., *Pro Hac Vice*
Oregon Bar No. 044681
E-mail: erin.madden@gmail.com
CASCADIA LAW, P.C.
833 SE Main Street # 318
Portland, OR 97214
Telephone: (503) 753-1310
Fax: (503) 296-2973

*Of Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUDY BUNDORF, *et al.*,<br><br>              Plaintiffs,<br><br>    v.<br><br>S.M.R. JEWELL, *et al.*,<br><br>              Defendants,<br>   and<br><br>SEARCHLIGHT WIND ENERGY, LLC<br><br>           Intervenor. | CASE NO.:    2:13-cv-616-MMD-PAL<br><br><br><br>**MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT**<br><br>**REQUEST FOR ORAL ARGUMENT** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ....................................................................................... iii

GLOSSARY OF ACRONYMS AND ABBREVIATIONS ....................................... v

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION,
CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT ................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 2

INTRODUCTION ..................................................................................................... 2

ARGUMENT ............................................................................................................. 4

    I.    LEGAL STANDARDS ................................................................................ 4
        A.    Vacatur, Clarification and Amendment of Judgment. .......................... 4
        B.    Permanent Injunction. .......................................................................... 5

    II.    THE COURT SHOULD VACATE THE ROD, FEIS AND BIOP AND
        CLARIFY ITS REMAND ORDER ........................................................... 5

        A.    The Court's Holding That Further Explanation is Necessary From
            the Agencies Warrants Vacatur. ........................................................... 5
            1.    The Court Relied on Dicta in Cases That Did Not Involve Remands. ............... 5
            2.    No Court in This Circuit Has Ever Remanded a Decision Involving NEPA for
        Amplification of the Record Without Granting Summary Judgment for Plaintiffs. . 9
            3.    Vacatur and New Agency Decisions Are Necessary to Guarantee Plaintiffs
        Their Right to Judicial Review. ............................................................ 11

        B.    The Court Should Vacate the ROD and FEIS. ..................................... 12
            1.    Vacatur of the ROD and FEIS is Appropriate When an Agency Decision is
        Deemed Inadequate for Judicial Review or Requires a Supplemental NEPA
        Evaluation. ......................................................................................... 12
            2.    NEPA's Democratic Decisionmaking Structure Requires That BLM's
        Additional Analysis be Performed With Opportunity for Public Comment and a
        new Record of Decision Issued. ........................................................... 17

        C.    The Court Also Should Vacate the BiOp. ............................................ 19

        D.    Vacatur is the Presumptive Remedy for Violations of the APA. .......... 20

    III.    THE COURT SHOULD ISSUE A PERMANENT INJUNCTION ............... 23

        A.    Irreparable Harm. ................................................................................ 24
        B.    The Balance of Harms. ........................................................................ 26
        C.    The Public Interest. ............................................................................. 27

CONCLUSION ......................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045 (9th Cir. 2010) ................................... 27

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101  (9th Cir. 2011) ..................................................... 4

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) ....................................... 22, 23

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987)................................ 5, 23, 24, 26

*Appalachian Power Co. v. EPA*, 477 F.2d 495 (4th Cir. 1973).................................................. 7

*Asarco, Inc. v. EPA*, 616 F.2d 1153 (9th Cir. 1980)................................................................... 7

*Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794 (9th Cir. 1980) ............................................. 12

*Bair v. Cal. Dep't of Transp.*, 867 F. Supp. 2d 1058 (N.D. Cal. 2012) ..................................... 9

*Blue Mtns. Biodiversity Project v. Blackwood*, 161 F.3d 1208 (9th Cir. 1998) ......................... 18

*Bunyard v. Hodel*, 702 F. Supp. 820 (D. Nev. 1988)................................................................. 22

*Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075 (E.D. Cal. 2004)................ 10

*Cal. Communities Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012)............................... 21, 22

*Calvert Cliffs' Coordinating Comm. v. U.S. Atomic Energy Comm'n*,
    449 F.2d 1109 (D.C. Cir. 1971)............................................................................................ 18

*Camp v. Pitts*, 411 U.S. 138 (1973) ......................................................... 6, 8, 9, 12, 20, 21

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)................................. 21

*Ctr. for Biol. Diversity v. BLM*, 698 F.3d 1101 (9th Cir. 2012) ........................................ 4, 10, 15

*Ctr. for Biol. Diversity v. BLM*, Mem. Disp.,
    Nos. 10–72356, 10–72552, 10–72762, 10–72768, 10–72775 (9th Cir. Oct. 22, 2012) ....... 4, 15

*Ctr. for Biol. Diversity v. BLM*, No. C 03-2509 SI, 2006 WL 2788252 (N.D. Cal. 2006).......... 15

*Ctr. for Biol. Diversity v. U.S. Forest Serv.*, 349 F.3d 1157 (9th Cir. 2003).............................. 18

*Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948 (N.D. Cal. 2010)................................... 21

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326 (1976).................... 11, 21

*Fidelity Fed. Bank, F.S.B. v. Durga Ma Corp.*, 387 F.3d 1021 (9th Cir. 2004)........................... 4

*Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989 (9th Cir. 1993) 11, 12

*Fuller v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991)................................................................ 4

*High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir. 2004) ................................ 23, 24

*Humane Soc'y v. Johanns*, 520 F. Supp. 2d 8 (D.D.C. 2007)................................................... 22

*Humane Soc'y v. Locke*, 626 F.3d 1040 (9th Cir. 2010)..................................................... 4, 13, 21

*Humane Soc'y v. Pritzker*, 548 F. App'x 355 (9th Cir. 2013)................................................... 14

*Idaho Farm Bureau v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995)............................................. 21, 22

*Idaho Sporting Cong. v. Alexander*, 222 F.3d 562 (9th Cir. 2000) ..................................... 16, 23

*Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146 (9th Cir. 1998) ........................................... 23

*In re Polar Bear Endangered Species Act Listing 4(d) Rule Litig.*,
    818 F. Supp. 2d 214 (D.D.C. 2011)...................................................................................... 22

*Local Joint Exec. Bd. v. NLRB*, 309 F.3d 578 (9th Cir. 2002)................................................. 13

*McDowell v. Calderon*, 197 F.3d 1253 (9th Cir. 1999).............................................................. 4

*Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000)....................................................................... 16

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)............................... 5, 21, 22, 23

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........... 10

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067 (9th Cir. 2011) ................. 17

*Native Ecosystems Council v. Dombeck*, 304 F.3d 886 (9th Cir. 2002)..................................... 24

*Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953 (9th Cir. 2005).................... 10, 11

*Nat'l Wildlife Fed'n v. NMFS*, 422 F.3d 782 (9th Cir. 2005) ........................................ 26

*Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372 (9th Cir. 1998)............. 22, 23

*Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092 (9th Cir. 2010) ........................................ 17, 18

*Or. Natural Res. Council v. Harrell*, 52 F.3d 1499 (9th Cir.1995) ........................................ 14

*Or. Natural Res. Council v. Marsh*, 52 F.3d 1485 (9th Cir. 1995)................................ 14, 18, 24

*Or. Natural Res. Council v. Marsh*, 677 F. Supp. 1072 (D. Or. 1987)........................................ 24

*Parravano v. Babbitt*, 837 F. Supp. 1034 (N.D. Cal. 1993) ........................................ 11

*Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768 (9th Cir. 2006) ........................................ 16

*Pub. Power Council v. Johnson*, 674 F.2d 791 (9th Cir. 1982)........................................ 6, 7

*Reed v. Salazar*, 744 F. Supp. 2d 98 (D.D.C. 2010) ........................................ 22

*Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126 (9th Cir. 2006)........................................ 23

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989)............................ 17, 18, 23

*S.E. Alaska Conserv. Council v. FHA*,
    No. 1:06–cv–00009 JWS, 2007 WL 2988013, (D. Alaska Oct. 10, 2007)............................ 3

*Sears Sav. Bank v. Fed. Sav. & Loan Ins. Corp.*, 775 F.2d 1028 (9th Cir. 1985) ............... 11

*Seattle Audubon Soc'y v. Espy*, 998 F.2d 699 (9th Cir. 1993) ........................................ 18

*Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77 (D.D.C. 2010) ........................................ 22

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015 (9th Cir. 2009)........................................ 5

*Thompson v. U.S. Dep't of Labor*, 885 F.2d 551 (9th Cir. 1989)........................................ 10

*Wash. Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ........................................ 26

*Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th Cir. 2013)........................................ 20

*Wild Fish Conservancy v. Salazar*, 628 F.3d 513 (9th Cir. 2010)........................................ 20

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................ 5

**Statutes**

42 U.S.C. § 4332(c) ........................................ 23

**Rules**

Fed. R. Civ. P. 56........................................ 2, 4

Fed. R. Civ. P. 59(e)........................................ 2, 4

Fed. R. Civ. P. 60(b)........................................ 2, 4

Fed. R. Civ. P. 65(d) ........................................ 2, 5

**Regulations**

40 C.F.R. § 1500.1 ........................................ 23

40 C.F.R. § 1501.2 ........................................ 23

40 C.F.R. § 1502.22(a)........................................ 18

40 C.F.R. § 1502.9(c)(4)........................................ 16, 17

# GLOSSARY OF ACRONYMS AND ABBREVIATIONS

APA             Administrative Procedure Act

BiOp            Biological Opinion

BBCS            Bird and Bat Conservation Strategy

BGEPA           Bald and Golden Eagle Protection Act

BLM             Bureau of Land Management

DEIS            Draft Environmental Impact Statement

EIS             Environmental Impact Statement

ESA             Endangered Species Act

FLPMA           Federal Lands Policy and Management Act

FEIS            Final Environmental Impact Statement

MBTA            Migratory Bird Treaty Act

NMFS            National Marine Fisheries Services

NEPA            National Environmental Policy Act

SEIS            Supplemental Environmental Impact Statement

USFWS           U.S. Fish & Wildlife Service

1

2

## PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

3       Pursuant to Federal Rules of Civil Procedure 56, 59(e), 60(b), and 65(d), plaintiffs

4   Judy Bundorf, Friends of Searchlight Desert and Mountains, Basin and Range Watch,

5   Ellen Ross, and Ronald Van Fleet, Jr. respectfully move for an order vacating the Record

6   of Decision ("ROD"), Final Environmental Impact Statement ("FEIS"), and Biological

7   Opinion ("BiOp") challenged in this case, issuing a permanent injunction against ground-

8   disturbing or species-disturbing activities related to the Searchlight Wind Energy Project

9   until such time as the Secretary of the Interior issues a new Record of Decision approving

10  or rejecting the applications for rights-of-way for the project, clarifying that it is

11  remanding the challenged decisions (and not the administrative record), and amending

12  the Judgment to incorporate the requested order. Counsel for plaintiffs sent an email

13  asking counsel for the federal defendants how the federal agencies intend to proceed in

14  light of this Court's February 3, 2015 Order, but received no response.

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The parties did not have an opportunity to submit briefing regarding remedy after the Court issued its February 3, 2015 Order or before it issued its February 18, 2015 Minute Order. The Court did not rule on plaintiffs' request in the First Supplemental and Amended Complaint and Motion for Summary Judgment that the ROD, FEIS and BiOp be vacated. Dkt ## 36, 40. The Supreme Court and Ninth Circuit have made clear that the presumptive and appropriate remedy for the violations of the National Environmental Policy Act ("NEPA") under the Administrative Procedures Act ("APA"), including the deficiencies in analysis this Court identified, is vacatur of the challenged decisions. No equitable considerations are present in this case that would warrant a remand without vacatur. Without vacatur of the ROD, FEIS and BiOp, nothing prevents the developer from proceeding with the project, and nothing obligates the Secretary to revisit her predecessor's arbitrary and inadequately informed decision. Because the developer has just signed a Memorandum of Agreement with the Department of the Navy and promised that the project will be in operation by 2016 or 2017, and irreparable injury to desert tortoise, golden eagles, other birds and bats—and to the plaintiffs' interests in the preservation and enjoyment of these species in this pristine corner of Nevada—will occur if the construction and operation of the project occur, the Court also should enter a permanent injunction prohibiting ground-disturbing or species-disturbing activities until the Secretary of the Interior issues a new Record of Decision.

The Court's disposition of the plaintiffs' four claims in this case literally is unprecedented. A search of Westlaw discloses that this is the *only* decision in the Ninth Circuit or any of its district courts where a court has decided to "remand the administrative record" to adjudicate claims properly brought under the APA.[1] We have found no other decision that has

---

[1] The phrase appears in one other reported decision, an order on a motion by plaintiffs requesting that a district court "remand the administrative record" to an agency to include materials that were omitted from the administrative record to complete the record. *S.E. Alaska Conserv.*

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

1    disposed of a claim under NEPA in this manner. Plaintiffs seek clarification that the Court is

2    remanding the challenged <u>decisions</u>, because the administrative record is not being challenged

3    here: plaintiffs have invoked judicial review of the ROD, FEIS, and BiOp. Further, there are no

4    reported cases in which a court in this Circuit remanded an agency's decision and supporting

5    NEPA documentation for "amplification" without simultaneously granting summary judgment

6    with respect to the claim for which amplification is ordered.

7            The statements on which the Court relies for its disposition of the case regarding

8    remanding to agencies for further consideration are decades-old dicta in cases where the courts

9    did not, in fact, remand cases to agencies, and which did not involve NEPA, a statute that

10   obligates agencies to disclose *accurate* information to the public and to the Secretary so that she

11   can make an informed decision whether this project should be authorized. Rather, where an

12   agency *has* provided contemporaneous explanation of its decision—as the agencies have done

13   here in the 1,271-page FEIS, 305-page ROD, and 60-page BiOp[2]—but a Court finds the course

14   of inquiry inadequate, the Supreme Court has held repeatedly that a court must *vacate* the

15   challenged actions, and then remand to the agencies for further consideration. Remanding, while

16   declining to rule on plaintiffs' claims, and not retaining jurisdiction over those claims until the

17   agencies provide the additional explanation the Court has deemed necessary for adequate judicial

18   review, forecloses plaintiffs' right to judicial review unless the challenged decisions also are

19   vacated. Vacatur, the default remedy under the APA, preserves that right by requiring the agency

20   to address the deficiencies the Court has identified in new decision documents, which plaintiffs

21   could subsequently challenge if they, too, violate the law.

22   //

23   //

24   //

25
                                ────── (continued)
26   *Council v. FHA*, No. 1:06–cv–00009 JWS, 2007 WL 2988013, at *3 (D. Alaska Oct. 10, 2007).

27   [2] FEIS and appendices, AR 3019–4299; ROD and appendices, AR 1188–492; BiOp, AR 133–92.

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION
OF ORDER & AMENDMENT OF JUDGMENT

3

# ARGUMENT

## I.    LEGAL STANDARDS

### A.    Vacatur, Clarification and Amendment of Judgment.

The Court has the inherent power to grant the remedy of vacatur of agency decisions attendant to its disposition of a Fed. R. Civ. P. 56 motion for summary judgment. *Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010). Vacatur of agency action is the appropriate remedy when a court finds that an agency's explanation is incomplete and inadequate to permit judicial review, *id.*, where a court has found that a biological opinion is inadequate with regard to its evaluation of potential impacts to a listed species or fails to discuss information that would undercut the opinion's conclusion, *Ctr. for Biol. Diversity v. BLM*, 698 F.3d 1101, 1128 (9th Cir. 2012), or where a court has ordered preparation of a supplemental EIS. *Ctr. for Biol. Diversity v. BLM*, Mem. Disp. at 5–7, 14, Nos. 10–72356, 10–72552, 10–72762, 10–72768, 10–72775 (9th Cir. Oct. 22, 2012) (attached as Ex. 1).

To the extent that this motion requests the Court to clarify or reconsider/alter/amend its February 3, 2015 Order (Dkt # 90), February 18, 2015 Minute Order (Dkt # 93) and the February 19, 2015 Judgment (Dkt # 96), plaintiffs request that the Court do so pursuant to Fed. R. Civ. P. 59(e) and 60(b). The district court generally applies the same analysis under both rules. *See Fidelity Fed. Bank, F.S.B. v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (discussing FRCP 60(b)); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991) (discussing FRCP 59(e)). "[T]here are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc) (per curiam)). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell*, 197

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

F.3d at1255 n. 1.

**B.    Permanent Injunction.**

The standard for a motion for permanent injunction under Fed. R. Civ. P. 65(d) is essentially the same as for a preliminary injunction, except that a plaintiff must show actual success on the merits rather than a likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 32 (2008). This Court has broad discretion to craft an equitable remedy. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009). To obtain permanent injunctive relief after succeeding on the merits, a plaintiff seeking a permanent injunction must show "that he is likely to suffer irreparable harm in the absence of . . . relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57, 162 (2010) (stating the four-factor test for permanent injunctions for violations of NEPA).

## II.    THE COURT SHOULD VACATE THE ROD, FEIS AND BIOP AND CLARIFY ITS REMAND ORDER

### A.    The Court's Holding That Further Explanation is Necessary From the Agencies Warrants Vacatur.

#### 1.    The Court Relied on Dicta in Cases That Did Not Involve Remands.

There is no precedent for a court "remanding the administrative record" because the administrative record is not a challenged decision nor is it final agency action subject to judicial review. The challenged actions in this case are the ROD, FEIS and BiOp. First Supp. & Am. Complaint ¶¶ 99–101, 103–114, Prayer for Relief A. It appears that the Court did intend to remand the challenged decisions for further explanation. Feb. 3, 2015 Order at 15 ("the Court finds that further explanation from Federal Defendants is necessary before the Court can review the merits of Plaintiffs' claim that the FEIS violates NEPA."); *see also id*. at 17 ("the Court will remand the ROD, FEIS, and BiOp to Federal Defendants"), 18 ("The Court remands the Record of Decision, the Final Environmental Impact Statement, and the Biological Opinion to the appropriate federal agencies for amplification of the administrative record to explain the missing

factors that the Court has identified."). Accordingly, the Court's disposition should be clarified to eliminate the confusion arising from the inapposite reference to remanding the administrative record. *Id*. at 2.

The Court's use of the term "remand the administrative record" may stem from the fact that the dicta in the four cases it cites for the principle that there must be a remand when an agency does not consider relevant factors or provide an explanation is loose and confusing. This is largely because, except for one of the cases, these decisions *did not involve a remand at all*, but rather were addressing when it would be appropriate for a court to allow discovery or take testimony in a challenge to an administrative agency action. For example, *Public Power Council v. Johnson* involved a petition for direct review to the Court of Appeals in which the petitioner sought depositions and discovery from the respondent agency, and the agency moved to quash the subpoenas. 674 F.2d 791, 792 (9th Cir. 1982). The Ninth Circuit *denied* the motion to quash, holding that it was proper, in the circumstances of that case, for the petitioner to take discovery. *Id*. at 795–96. Thus the Court's recitation of alternatives for "considering petitioner's discovery requests" was a laundry-list of ways a court might address such requests. *Id*. at 794–95. The Court explained that, only "[w]hen there is 'such a failure to explain administrative action as to frustrate effective judicial review,' the court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the agency decision as may prove necessary.'" *Id*. at 793–94 (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973)). However, the Court also explained that "[b]ecause this exception is so broad in its formulation, courts have been reluctant to invoke it." *Id*. at 794. Instead, the Court's declared in dicta that "[w]hen there is a need to supplement the record to explain agency action, the preferred procedure is to remand to the agency for its amplification." It is this dicta in *Public Power* on which this Court relied. *Id*.; Feb. 3, 2015 Order at 13.

*Public Power* cites to two cases for that supposedly "preferred procedure" which have no applicability to this case that involves an 18,509 page, certified administrative record and three challenged decisions which total a combined 1,636 pages. In *Appalachian Power Co. v. EPA*, the

petitioners in another direct review case sought remand to the agency to conduct an evidentiary hearing on the agency's approval of a state Clean Air Act implementation plan. 477 F.2d 495, 499–500 (4th Cir. 1973). The Fourth Circuit had before it only two documents—the Administrator's approval order and the state plan. *Id.* at 506. The Court ordered the agency to certify, to the Court of Appeals, "the 'full record' that was before him at the time he approved the state plans"—the context of the "remand for amplification in that case." *Id.* at 507. Here, of course, Secretary Jewell, by her counsel, *has* certified the administrative record as complete. Dkt ## 27-1, 27-3, 55-1.[3] Notably, also, the Fourth Circuit in *Appalachian Power* was considering a petitioners' motion for remand to conduct an administrative hearing—not a motion for summary judgment in a case with a complete administrative record. 477 F.2d at 500.

The other case cited in *Public Power* for the proposition that an inadequately explained decision should be remanded for amplification of the administrative record is *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). In *Asarco*, the Ninth Circuit was reviewing a district court decision to conduct a four-day evidentiary hearing involving ten live witnesses on Asarco's claim that the Environmental Protection Agency's order to install a 1000-foot tall stack at Asarco's copper smelter was arbitrary and capricious. *Id.* at 1155, 1157, 1160. The Ninth Circuit stressed that the "predominant" rule in judicial review is that "agency action must be examined by scrutinizing the administrative record *at the time the agency made its decision.*" *Id.* at 1159 (emphasis added). It was in the context of rejecting the district court's trial-like hearing that the Court of Appeals stated that "[i]f the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits." *Id.* at 1160. Indeed, the Court in *Asarco* was able to find, based on the existing record, that the agency had not provided a reasoned basis for its action or explained its course of conduct, and

---

[3] Where the administrative record has been certified, there is a presumption that the agency designated the complete administrative record. *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).

*vacated and remanded the order* to the agency for further proceedings. *Id.* at 1162–63.

Because of the posture and disposition of these cases, none of them supply any explanation of what "amplification of the administrative record" actually means. In none of these cases did the appellate court actually remand an agency record to provide further explanation, as this Court appears to suggest here. In another case addressing this issue, the Supreme Court considered an appeal from the Comptroller of the Currency after the Fourth Circuit held a decision denying an application to open a new bank to be "'unacceptable' because 'its basis' was not stated with sufficient clarity to permit judicial review. *Camp v. Pitts*, 411 U.S. 138, 140 (1973). The issue on appeal, however, challenged only the "trial de novo" proceedings the Court of Appeals had ordered the district court to undertake. *Id.* The Supreme Court agreed that these evidentiary proceedings were improper because they "seem to put aside the extensive administrative record already made and presented to the reviewing court." *Id.* at 142. The Supreme Court then stated that, if "there was such failure to explain agency action as to frustrate effective judicial review," the court should not conduct a trial-type hearing, but rather "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Id.* at 142–43.

But the Supreme Court added a caveat that is critically relevant here: "[u]nlike *Overton Park*, in the present case there was a contemporaneous explanation of the agency decision. The explanation may have been curt, but it surely indicated the determinative reason for the final action taken." *Id.* at 143. In such instances, "[t]he validity of the Comptroller's action must, therefore, stand or fall on the propriety of that finding." *Id.* If the "finding is not sustainable on the administrative record made"—as this Court has apparently concluded in the instant case—"then the Comptroller's *decision must be vacated and the matter remanded to him* for further consideration." *Id.* (emphasis added). When an agency has offered *some* explanation for its actions—and here the federal defendants have argued extensively that the agencies did consider all appropriate factors and explain their decisions adequately—but the court nevertheless finds a failure to

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

explain agency action, the proper course for a court is to vacate the challenged decisions

and remand to the agencies to prepare new decisions.

> **2.** **No Court in This Circuit Has Ever Remanded a Decision Involving NEPA for Amplification of the Record Without Granting Summary Judgment for Plaintiffs.**

The fact that a remand of a decision in a NEPA case for amplification of the

administrative record is anything but the "preferred procedure" is illustrated by the fact that no

other court in this Circuit has remanded a claim involving NEPA for "amplification" of the

record without first granting summary judgment in favor of plaintiff on the issue requiring the

remand. In *Bair v. California State Department of Transportation*, the district court granted

summary judgment in favor of plaintiff on a single issue. 867 F. Supp. 2d 1058, 1061, 1068

(N.D. Cal. 2012). That district court held that serious inaccuracies in maps of old growth trees

that the agency relied on raised "serious questions about whether Caltrans truly took a 'hard

look' at the effects of the project." *Id.* at 1066. That Court concluded that the agency's "fact

finding was arbitrary and capricious, and that a more developed record is necessary." *Id.* "The

errors in the maps frustrate effective judicial review of the agency's actions, and additional

explanations of the reasons for the agency's decisions is therefore in order." *Id.* at 1067. That

Court then ordered the agency to prepare accurate maps and a revised Environmental

Assessment on remand, granting summary judgment to plaintiff in conjunction with the remand.

*Id.* at 1067–68.[4]

As explained in detail below, if this Court disposes of the NEPA claim by seeking

additional explanation from the BLM on remand, it must vacate the ROD and FEIS. Another

---

[4] In the only other NEPA case we have been able to find in the courts of the Ninth Circuit to cite the dictum that "if the administrative record is inadequate to explain the action taken, the preferred practice is to remand to the agency for amplification," that district court noted that it was reviewing an administrative record that "consists of twelve volumes and over three thousand (3,421) pages" of scientific testing and analysis underlying the promulgation of an agency rule, and upheld the agency rule against a NEPA challenge *without* amplification of the record. *Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1105, 1122 (E.D. Cal. 2004).

case this Court cites in its February 3, 2015 Order, *Thompson v. U.S. Department of Labor*, involving a decision by the Secretary of Labor to approve a settlement agreement rather than a NEPA claim, was a case that involved an actual remand to an agency. 885 F.2d 551, 553–54 (9th Cir. 1989). Like all but one of the cases the Court cites, it involved a petition for direct review of agency action in the Court of Appeals rather than a decision by a district court finding that an administrative record that was missing key factual documents. *Id*. at 553, 555. But even in *Thompson*, the Court of Appeals *reversed* the Secretary of Labor's dismissal of the appellant's claim, effectively vacating it by forcing that Secretary to make a new decision on remand. 885 F.2d at 559.

In the parenthetical from *Thompson* this Court cites, and the sentence that follows, the Court appears to acknowledge "relevant factors that are missing from the Federal Defendants' wildlife analyses." Feb. 3, 2015 Order at 15. In NEPA and Endangered Species Act ("ESA") cases, the absence of consideration of relevant factors, or of a satisfactory explanation for an agency's action, ordinarily justifies a grant of summary judgment, vacatur, and remand. *See, e.g.*, *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 965 (9th Cir. 2005) ("The Forest Service has failed to provide us with a satisfactory explanation supported by the record showing the necessary rational basis for its hiding cover calculation."); *Ctr. for Biol. Diversity*, 698 F.3d at 1121–22 (a biological opinion is arbitrary and capricious if it fails to "consider the relevant factors and articulate a rational connection between the facts found and the choice made.") (internal quotations omitted); *see also Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made" or be found to have acted arbitrarily and capriciously).[5]

---

[5] Although there appear to be no Ninth Circuit cases ordering an agency to amplify an administrative record in a NEPA case based on failure to explain a decision adequately, at least one decision has endorsed the practice in dicta. *Friends of the Payette v. Horseshoe Bend Hydroelectric Co*., 988 F.2d 989, 997 (9th Cir. 1993) ("Generally, review of agency action, including review under NEPA, is limited to the administrative record but may be expanded

As the Ninth Circuit explained in *Native Ecosystems*, the failure to include a satisfactory explanation or basis for an agency's conclusions renders the decision arbitrary and capricious, relying on the Supreme Court's statement that "'[i]f the decision of the agency is not sustainable on the administrative record made, then the … *decision must be vacated* and the matter remanded … for further consideration.'" 418 F.3d at 965 (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) (per curiam) (second and third alterations in original)) (emphasis added).[6]

### 3.  Vacatur and New Agency Decisions Are Necessary to Guarantee Plaintiffs Their Right to Judicial Review.

This Court's Order appears to contemplate further opportunity for judicial review. *See, e.g.* Feb. 3, 2015 Order at 2, 18 (denying cross-motions "pending amplification of the administrative record"); *id.* at 15 ("the Court finds that further explanation from Federal Defendants is necessary before the Court can review the merits of Plaintiffs' claim that the FEIS violates NEPA."). However, the Court has not sought "through affidavit or testimony, additional explanations for the agency's decisions" or retained jurisdiction to adjudicate plaintiffs' claims after such explanation is forthcoming. *Camp*, 411 U.S. at 143; *Friends of the Payette*, 988 F.2d at

──────────────────── (continued)

beyond the record if necessary to explain agency decisions. When a failure to explain action frustrates judicial review, the reviewing court may obtain from the agency, through affidavit or testimony, additional explanations for the agency's decisions").

[6] The Ninth Circuit ordinarily takes a narrow view of the circumstances in which an "administrative record is inadequate to explain the action taken" so as to warrant a remand for "amplification." *Sears Sav. Bank v. Fed. Sav. & Loan Ins. Corp.*, 775 F.2d 1028, 1030 (9th Cir. 1985). In that case, the challenged decision was an agency resolution approving a corporate affiliate transaction. *Id.* at 1029. The decision "simply states that 'subject to the conditions set out below, [the proposed] agreement would not be detrimental to the interests of the savings account holders or to the insurance risk of the Corporation.' The Board provides no reasons for imposing these conditions." *Id.* at 1029–30. Because the decision contained no explanation *at all* of why the agency made its decision, the Ninth Circuit remanded to the agency for a clarification of its decision. *Id.* at 1029. Accordingly, a finding that "there is 'such a failure to explain administrative action as to frustrate effective judicial review' … is limited to cases where the agency action is so poorly explained that effective review is precluded." *Parravano v. Babbitt*, 837 F. Supp. 1034, 1039 (N.D. Cal. 1993).

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

997. Because an agency cannot create post-decisional analyses to support a decision it has already made, the appropriate remedy for the procedural errors identified here, including the obligation to prepare a supplemental EIS ("SEIS") on golden eagles, and one which will provide plaintiffs a mechanism to preserve their right to judicial review of the Secretary's approval of the project, is to vacate the challenged decisions. *Camp*, 411 U.S. at 143 (when an agency has provided some explanation for its action but it is not sustained by the existing administrative record, the "decision must be vacated and remanded"); *see Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811–12 (9th Cir. 1980) (parties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision.").

Without vacatur of the ROD and the supporting wildlife analyses in the FEIS and BiOp, the ROD remains in effect, and—except for preparing the SEIS on golden eagles—BLM and USFWS are under no obligation to address the ten serious deficiencies this Court identified nor to revisit the previously-made decision. Feb. 3, 2015 Order at 15. Unless the ROD is vacated, or an injunction issued, the developer can proceed with construction of the project, despite the serious deficiencies which this Court has ordered addressed, because the Court has not provided a mechanism to ensure that the agency complies with its Order and that the plaintiffs can obtain judicial review at some future point. The Ninth Circuit has made clear that, in such circumstances, vacatur of the ROD and supporting analyses is the proper mechanism to achieve what the Court appears to seek in this case.

**B.     The Court Should Vacate the ROD and FEIS.**

    **1.     Vacatur of the ROD and FEIS is Appropriate When an Agency Decision is Deemed Inadequate for Judicial Review or Requires a Supplemental NEPA Evaluation.**

Procedural errors, including a failure to explain an agency's action, warrant vacatur of the agency action. In *Humane Soc'y v. Locke*, the Ninth Circuit held that the National Marine Fisheries Service ("NMFS") had "not offered a satisfactory explanation for its action." 626 F.3d at 1048. The agency did "not adequately explain[ ] its finding that sea lions are having a 'significant negative impact' on the decline or recovery of listed salmonid populations" and did

"not adequately explain[ ] why a California sea lion predation rate of 1 percent would have a significant negative impact on the decline or recovery of these salmonid populations." *Id.* Accordingly, "[t]hese procedural errors require us to direct the district court to *vacate NMFS's decision* and remand to the agency to reconsider the action or provide a fuller explanation." *Id.* (emphasis added). After evaluating a series of issues that the Ninth Circuit deemed inadequately explained, the Court held

> that NMFS's explanation is incomplete and inadequate to permit meaningful judicial review. On the current record, NMFS has not explained its significance determination in light of seemingly inconsistent factual determinations in earlier environmental assessments of fishery impacts. Nor has the agency properly explained the basis of its determination that California sea lion predation of salmonids is significant at the 1 percent level.

*Id.* at 1053. The Court held that the failure to provide these explanations made the agency's action arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of 5 U.S.C. 706(2)(A), and the Court "direct[ed] the district court to vacate NMFS's decision approving the states' MMPA application and remand to NMFS to afford the agency the opportunity either to articulate a reasoned explanation for its action or to adopt a different action with a reasoned explanation that supports it." *Id.*; *see also Local Joint Exec. Bd. v. NLRB*, 309 F.3d 578, 585 (9th Cir. 2002) (vacating and remanding an agency decision because the Court was "unable to discern the Board's rationale for excluding dues-checkoff from the unilateral change doctrine in the absence of union security"). On remand, the agency issued a new decision, and included in it the explanation that the Court required. *Humane Soc'y v. Pritzker*, 548 F. App'x 355, 357 (9th Cir. 2013).

The Ninth Circuit similarly vacated an agency record of decision after ordering a supplemental EIS in the long-running case involving construction of the Elk Creek Dam on Oregon's Rogue River. *Or. Natural Res. Council v. Marsh*, 52 F.3d 1485 (9th Cir. 1995). In that case, the Ninth Circuit determined that the agency violated NEPA by failing to assess cumulative effects of the Elk Creek Dam in conjunction with other projects in the Rogue River Basin, and ordered the U.S. Army Corps of Engineers to prepare a supplemental EIS. *Id.* at 1491. In a

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

companion case, the Ninth Circuit held that "[a]s the environmental impact statement supplement upon which the 1992 ROD was based must be supplemented in light of our decision in [*Marsh*, 52 F.3d 1485]*, that record of decision can no longer be taken as the Corps' operative decision. Or. Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir.1995) (emphasis added).

Significantly, the Ninth Circuit in *Marsh* alerted the agency that it "must prepare an additional [SEIS] discussing the impact of the Elk Creek Dam in conjunction with the other Rogue River Basin projects, with regard not just to those factors specifically identified by us, *but to all environmental factors essential to an informed agency decision. Marsh*, 52 F.3d at 1491 (emphasis added). The Ninth Circuit later reiterated that the SEIS "should consider any environmental factors essential to informed agency decisionmaking." *Id.* at 1493. In the companion case, the Court of Appeals declined to order a new supplement based on other new information, but "note[d] that supplementation was ordered on other grounds in our opinion today in *Marsh VII,* 52 F.3d 1485, and [the] Corps may choose to address the new information in that supplement." *Harrell*, 52 F.3d at 1508 n.7. The availability of the SEIS this Court ordered for Searchlight Wind project impacts to golden eagles affords a similar opportunity for BLM to address the many deficiencies in its evaluation of impacts to tortoises, eagles, and bats this Court identified. Feb. 3, 2015 Order at 15. Vacatur of the ROD and FEIS "is necessary to allow the agencies to fully and meaningfully address" the procedural flaws, gaps and violations described in this Court's summary judgment order. *Ctr. for Biol. Diversity v. BLM*, No. C 03-2509 SI, 2006 WL 2788252, at *1 (N.D. Cal. 2006).

Although in other cases the Forest Service has issued new Records of Decision after preparing an SEIS, *see, e.g.*, *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (en banc), neither the Department of the Interior's NEPA regulations at 43 C.F.R. Part 46 ("Implementation of the National Environmental Policy Act of 1969") nor the BLM NEPA

1   Handbook[7] appear to address whether the BLM or the Secretary must issue a new Record of

2   Decision after conducting a court-ordered supplemental analysis. However, vacatur of the ROD

3   in these circumstances would be consistent with the Ninth Circuit's vacatur of the right-of-way

4   Record of Decision for the Ruby Pipeline project. That Court, on direct review, determined that

5   the BLM's evaluation of cumulative impacts "falls short of what NEPA requires" because it

6   failed to provide sufficient quantified or detailed data about cumulative loss of sagesteppe

7   vegetation. *Ctr. for Biol. Diversity v. BLM*, Mem. Disp. at 5–7 (Ex. 1). The Ninth Circuit

8   separately determined that the USFWS's biological opinion regarding impacts to listed fish was

9   legally flawed and also "inadequate with regard to evaluating the potential impacts of the

10  Project's groundwater withdrawals," and vacated the Record of Decision granting the right-of-

11  way for the pipeline because the Record of Decision relied on the flawed biological opinion. *Ctr.*

12  *for Biol. Diversity*, 698 F.3d at 1128. With respect to the inadequate NEPA analysis, the Ninth

13  Circuit granted the petition for review and remanded "to BLM to undertake a revised cumulative

14  effects analysis." *Ctr. for Biol. Diversity v. BLM*, Mem. Disp. at 14 (Ex. 1).

15      Vacatur of the Ruby Pipeline Record of Decision ensured that the agency would

16  undertake the specified analysis and issue a new decision. BLM's website for the Ruby Pipeline

17  described that the SEIS process would "serve as the foundation for BLM's decision whether to

18  reissue the BLM Right-of-Way (ROW) granted to Ruby Pipeline, LLC, for the project and, if so,

19  to determine what terms and conditions it would require." Ex. 2 at 1. Vacatur of the ROD and

20  FEIS in this case is necessary to ensure that the Secretary makes the same fresh determination

21  and, if she decides to reissue the rights-of-way, whether additional terms and conditions are

22  necessary in light of an *accurate* evaluation of the Searchlight Wind project's impacts to

23  wildlife.

24      Finally, vacatur of the ROD and FEIS is consistent with the Ninth Circuit's NEPA

25  _____

26  [7] Available at
    http://www.blm.gov/style/medialib/blm/wo/Information_Resources_Management/policy/blm_ha

27  ndbook.Par.24487.File.dat/h1790-1-2008-1.pdf (last visited Feb. 27, 2015).

jurisprudence. The Ninth Circuit has explained that "[b]ecause [NEPA] is procedural in nature, we will set aside agency actions that are adopted without observance of procedure required by law." *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 781 (9th Cir. 2006); *see also Idaho Sporting Cong. v. Alexander*, 222 F.3d 562, 567 (9th Cir. 2000) ("NEPA is a procedural statute, and we have held that agency action taken without observance of the procedure required by law will be set aside"); *Metcalf v. Daley*, 214 F.3d 1135, 1146 (9th Cir. 2000) ("The district court is directed to order the Federal Defendants to set aside the FONSI, suspend implementation of the [project], begin the NEPA process afresh, and prepare a new EA."). Because NEPA is a democratic decisionmaking *process*, an agency which has violated NEPA must take a fresh look at the issues flagged by a reviewing court as inadequately addressed through the appropriate procedure specified by NEPA and its implementing regulations. In this case, vacatur of the ROD, FEIS and BiOp will allow the agencies to start "afresh," and proceed through the decisionmaking process—involving putting its new analysis before the public in a draft supplement to the FEIS, taking public comment (and comment from expert agencies), publishing a final SEIS, leading to a *new*, properly informed decision by the Secretary, in a new Record of Decision, whether to grant the rights-of-way to authorize construction of this project. *See* 40 C.F.R. § 1502.9(c)(4) (when an agency prepares a supplemental EIS, it "[s]hall prepare, circulate, and file a supplement to a statement in the same fashion (exclusive of scoping) as a draft and final statement")

Vacating the ROD ensures that the Secretary, when presented with *accurate* information regarding the impacts to tortoises, eagles, other birds and bats within this pristine area containing the highest concentrations of tortoises and golden eagle nests in Nevada will be able to make a fully-informed decision whether to approve rights-of-way for the Project—and, if the decision is to approve, to determine what additional protective conditions to the rights-of-way (such as limits on the number of eagles, birds, bats, or other wildlife killed or harmed before specific curtailment criteria are imposed) should be included in the new Record of Decision and its associated rights-of-way.

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

  **2.**  **NEPA's Democratic Decisionmaking Structure Requires That BLM's Additional Analysis be Performed With Opportunity for Public Comment and a new Record of Decision Issued.**

  The reason that courts do not ordinarily remand NEPA decisions for "further explanation" is because NEPA is a unique, public process, which generates—as in this case—extensive, detailed environmental analyses and large administrative records. The Ninth Circuit has repeatedly stressed the importance of NEPA's goals of informing the public and the decisionmaker of information regarding significant environmental impacts. *See, e.g.*, *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1085 (9th Cir. 2011); *Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092, 1099–1100 (9th Cir. 2010) ("NEPA relies upon democratic processes to ensure … "the most intelligent, optimally beneficial decision will ultimately be made." … "NEPA's purpose is not to generate paperwork-even excellent paperwork-but to foster excellent action.") (citations omitted). In *Northern Plains Resource Council*, the Court of Appeals explained that a lack of data and explanation in an EIS means that "without this data, an agency cannot carefully consider information about significant environmental impacts," which results in an arbitrary and capricious decision. 668 F.3d at 1085. Where data and evaluation by the agency "is not available during the EIS process and is not available to the public for comment … the public is deprived of their opportunity to play a role in the decision-making process." *Id.* (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989)). Both the public and the ultimate decisionmaker—in this case, the Secretary of the Interior—were deprived of accurate information about the impacts of the Searchlight Wind project on protected species and other wildlife at this project site.

  When an agency prepares a supplemental EIS, it "[s]hall prepare, circulate, and file a supplement to a statement in the same fashion (exclusive of scoping) as a draft and final statement." 40 C.F.R. § 1502.9(c)(4). The circulation of a draft SEIS is critical to allow the public and other agencies, such as Nevada Department of Wildlife and USFWS, to comment on not only the impacts to eagles but, presumably, the other ten or so issues that this Court directed BLM to address on remand. *See Marsh*, 52 F.3d at 1491, 1493. NEPA requires that agencies

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

place their data, analyses and conclusions before the public, in the EIS itself. *Ctr. for Biol. Diversity v. U.S. Forest Serv.*, 349 F.3d 1157, 1167 (9th Cir. 2003); *Seattle Audubon Soc'y v. Espy*, 998 F.2d 699, 704 (9th Cir. 1993); *Blue Mtns. Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1213–14 (9th Cir. 1998); *see also Or. Natural Desert Ass'n*, 625 F.3d at 1099–1110, 1112–14, 1120–21 (explaining same for analysis of wilderness characteristics in a BLM land use plan); 40 C.F.R. § 1502.22(a) (where information "is essential to a reasoned choice among alternatives . . . the agency shall include the information in the [EIS]"). As a result—to present the Secretary with accurate information about "all environmental factors essential to an informed agency decision," *Marsh*, 52 F.3d at 1491—BLM likewise should address the list of deficiencies in its analysis that this Court identified in a *public* process through the SEIS.

As the Ninth Circuit explained in *Oregon Natural Desert Association*, NEPA is meant to work "through the creation of a democratic decisionmaking structure that, although strictly procedural, is 'almost certain to affect the agency's substantive decision[s].'" 625 F.3d at 1099 (quoting *Robertson*, 490 U.S. at 350). By requiring agencies "to place their data and conclusions before the public . . . NEPA relies upon democratic processes to ensure—as the first appellate court to construe the statute in detail put it—that 'the most intelligent, optimally beneficial decision will ultimately be made.'" *Id.* at 1100 (quoting *Calvert Cliffs' Coordinating Comm. v. U.S. Atomic Energy Comm'n*, 449 F.2d 1109, 1114 (D.C. Cir. 1971)). This, in turn, ensures open, honest and public discussion "in the service of sound decisionmaking." *Id.* at 1122.

The Court has provided an extensive list of items that BLM and USFWS must address because the agencies failed to adequately explain them in the FEIS and BiOp. These items go to the very heart of the BLM and USFWS wildlife analyses: the agency's failures to provide accurate information regarding the number of desert tortoises on site,

> the adverse effects on desert tortoise habitat due to noise, and the remuneration fees and blasting mitigation measures. FWS and BLM should further explain the status of FWS's recommendations regarding eagle take permitting and an Eagle Conservation Plan. BLM should also address its conclusions about risks to bald eagles, protocols for golden eagle surveys, and risks and mitigation measures for bat species.

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

1

2   Feb. 3, 2015 Order at 15. If the Court wishes to afford the agencies an opportunity to prepare

3   further explanations, it must preserve plaintiffs' right to judicial review by vacating the ROD,

4   FEIS, and BiOp.

5          In this case, because of the more than 10 significant issues that the BLM and USFWS

6   failed to address or explain in the FEIS and BiOp, Secretary Salazar and the public were not

7   provided with accurate information regarding the environmental impacts of the Searchlight Wind

8   project. At the most basic level, the FEIS and BiOp do not disclose that the project area contains

9   the highest concentration of desert tortoises anywhere in Nevada, nor that the surrounding

10  mountains hold the highest concentration of golden eagle nests in the state, and inexcusably

11  understate the project's impacts to these protected species. The FEIS plainly states that 119

12  tortoises occur in the entire project area, AR 3155, when the actual number of tortoises on the

13  site is at least 800 to 950. *See* AR 160; First Cashen Decl. ¶¶ 6–7 (Dkt # 44). The FEIS states

14  that two eagle nests were located approximately 10 miles from the project site boundary, AR

15  3161, whereas the 2011 nest survey data, which BLM had paid for but did not disclose to the

16  public or Secretary Salazar, identified 28 nests within 10 miles of the site—including 19 within

17  five miles of the site. Second Cashen Dec. ¶¶ 5–9 (Dkt # 72). Secretary Salazar, skimming the

18  FEIS before making his decision whether to sign the ROD, could only have been misled by the

19  information in the FEIS showing the abundance of protected tortoises and eagles in the project

20  area to be an order of magnitude smaller than they in fact are. As a result, the Secretary made an

21  *uninformed*, arbitrary decision to sign the Searchlight Wind ROD. Vacatur of the ROD is

22  appropriate in these circumstances, and vacatur will ensure that BLM will address the

23  deficiencies identified by the Court in order to provide Secretary Jewell accurate information

24  when she makes her decision whether to re-approve the project in a new Record of Decision.

25        **C.     The Court Also Should Vacate the BiOp.**

26        For similar reasons, the Court should also vacate the BiOp. The Court has identified that,

27  among the issues USFWS must address on remand are "the adverse effects on desert tortoise

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION
OF ORDER & AMENDMENT OF JUDGMENT

habitat due to noise and the remuneration fees and blasting mitigation measures." Feb. 3, 2015 Order at 15. As in *Camp*, the USFWS did provide a curt explanation for its no-jeopardy conclusion regarding chronic turbine noise impacts by stating that "desert tortoises do not rely on auditory cues for their survival." AR 168. As plaintiffs explained, this is simply wrong, as it is contrary to the USFWS's Recovery Plan for tortoises, which specifically states that tortoises depend on vocalization to communicate with one another, to maintain social hierarchy, and on hearing to avoid predators, and that masking such vocal signals ìessential for individual survival and reproductive successî will harm tortoises. USFWS AR 1699–1700. In these circumstances, where an explanation is provided but the decision cannot be sustained on the record, "the decision must be vacated and the matter remanded." *Camp*, 411 U.S. at 143.

Ordinarily, such a clear error of analysis and failure to address an essential issue would justify a grant of summary judgment, as well as vacatur and remand, in a case involving a biological opinion. *See, e.g.*, *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 532 (9th Cir. 2010); *see also Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 802 n.9 (9th Cir. 2013) (explaining that prior decision had involved vacatur of the biological opinion). The Ninth Circuit held that the consulting agency had failed to explain why it did not consider future infrastructure improvements in the biological opinion, *Wild Fish Conservancy*, 628 F.3d at 524, and how its conclusion that, although long-term negative trends in listed fish populations affected by the hatchery were likely to continue, the agency nevertheless concluded that there would be no jeopardy to those fish. *Id*. at 526–28. The failure "to articulate a rational connection between the facts found and conclusions made," together with other legal flaws the Court of Appeals identified, required the vacatur of the biological opinion and a "grant [of] injunctive relief until the [consulting agency] complies with its obligations under the ESA." *Id*. at 529, 531. The Court likewise should vacate the BiOp in this case for USFWS to prepare a proper analysis.

**D.    Vacatur is the Presumptive Remedy for Violations of the APA.**

Since its decision in *Camp v. Pitts*, the Supreme Court has stressed that vacatur is the presumptive remedy for a violation of the APA, even in situations where a court is remanding

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

because of a perceived lack of explanation that frustrates judicial review. *Camp*, 411 U.S. at 143; *see also Fed. Power Comm'n* , 423 U.S. at 331 (explaining that "[i]f the decision of the agency is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded"). The Ninth Circuit has held that procedural violations, such as the failure to provide explanations so as to frustrate judicial review, render an agency action arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law in violation of APA Section 706(2)(A). *Humane Soc'y*, 626 F.3d at 1053. In the seminal *Overton Park* case, the Supreme Court specified that vacatur is the appropriate remedy for such violations: "[i]n all *cases* agency action *must be set aside* if the action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971) (emphasis added)

In 2010, the Supreme Court confirmed that vacatur is the standard remedy for violations of law such as defendants have committed here. *Monsanto*, 561 U.S. at 139 (urging courts to employ vacatur before considering injunctive relief). Vacatur is thus the default remedy for an agency's violation of the APA. Courts nevertheless have discretion to remand actions without vacatur in "rare circumstances." *Humane Soc'y*, 626 F.3d at 1053 n.7 (nevertheless vacating agency decision); *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) (explaining that "the Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely [when] serious irreparable environmental injury" will occur if the decision is vacated). The circumstances justifying remand without vacatur—such as leaving a rule in place because it is protective of an endangered species, *Idaho Farm Bureau v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995), or because the procedural defects were so minor, *Cal. Communities Against Toxics v. EPA*, 688 F.3d 989, 993 (9th Cir. 2012) (declining to vacate because agency omitted documents from an administrative docket)—are not present in this case.

Indeed, almost every court recognizing or applying this discretion has specifically acknowledged its limited applicability or explained, using varying language, that vacatur is in fact the "presumptive" or "ordinary" remedy for violations of Section 706. *Cal. Communities*,

688 F.3d at 994 (remand without vacatur only "in limited circumstances"); *Idaho Farm Bureau*, 58 F.3d at 1405 ("ordinarily"); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("normal[]"); *In re Polar Bear Endangered Species Act Listing 4(d) Rule Litig.*, 818 F. Supp. 2d 214, 238 (D.D.C. 2011) ("presumptive"); *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010) ("default"); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (vacatur is "presumptively appropriate remedy for a violation of the APA"), *aff'd in part, rev'd in part on other grounds*, 661 F.3d 1147 (D.C. Cir. 2011); *Humane Soc'y v. Johanns*, 520 F. Supp. 2d 8, 37 (D.D.C. 2007) ("standard"); *see also Bunyard v. Hodel*, 702 F. Supp. 820, 822 (D. Nev. 1988) (citing opinions from the Third, Fifth, and Eleventh Circuits for the proposition that "[w]here . . . agency misconduct occurs, the proper remedy is to vacate the agency decision at issue and remand the matter.")

Most of the case law addressing remedies for violations of the APA predates *Monsanto*, an APA/NEPA case, where the Supreme Court addressed the distinction between injunctive relief and vacatur, stating that vacatur is the "less drastic remedy," while injunctive relief is "extraordinary" and "not granted as a matter of course." 561 U.S. at 166. Before *Monsanto*, much of the APA case law generally, and the NEPA case law specifically, granted the plaintiff injunctive relief without considering or mentioning vacatur. *See, e.g.*, *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1382 (9th Cir. 1998). Unlike injunctive relief, however, because vacatur is the "presumptively appropriate remedy" under the APA, particularly for the sort of NEPA and ESA violations here, it is *the federal defendants'* burden to demonstrate that vacatur is not appropriate when it has violated the law or failed to explain its decisions adequately. *See Sierra Club*, 719 F. Supp. 2d at 78–79 (noting that "the Supreme Court . . . ha[s] held that remand, along with vacatur, is the presumptively appropriate remedy for a violation of the APA"); *see also Am. Bioscience*, 269 F.3d at 1084 (if a plaintiff "prevails on its APA claim, it is entitled to relief under that statute, which normally will be a vacatur" whether or not plaintiff has shown irreparable injury). Departure from the presumptively appropriate remedy is an equitable defense to vacatur, one which the party asserting the equitable defense must raise and

1   prove. *See Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1139 (9th Cir. 2006) (party

2   asserting equitable defense "must show" its applicability).

3         Vacatur in cases where an agency has violated NEPA is particularly appropriate. When

4   remedying the violation of a statute, courts have the duty to protect the underlying purposes

5   sought to be served by that statute. *See Amoco Prod.*, 480 U.S. at 542–43. NEPA's primary

6   purpose is to require federal agencies to publicly disclose and fully analyze the environmental

7   impacts of their proposals before making any final decisions. 42 U.S.C. § 4332(c); 40 C.F.R. §§

8   1500.1, 1501.2; *Robertson*, 490 U.S. at 348-49. Where, as here, the injury derives from a failure

9   to follow the required process, a court fashioning relief must focus on protecting the integrity of

10   that process. The "gaps" in BLM's analysis go to the very heart of its evaluation of the project's

11   effects on wildlife, and represent significant issues that were misrepresented to Secretary Salazar

12   before he approved the ROD. No remedy other than setting aside the decision can redress a

13   NEPA injury, given the statute's "action-forcing" purpose. Prior to *Monsanto*'s expressed

14   preference for vacatur, the Ninth Circuit routinely endorsed or ordered injunctive relief for

15   serious NEPA violations. *See, e.g.*, *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 644-45

16   (9th Cir. 2004); *Idaho Sporting Cong.*, 222 F.3d at 567  ("NEPA is a procedural statute, and we

17   have held that agency action taken without observance of the procedure required by law will be

18   set aside."); *Neighbors of Cuddy Mountain,* 137 F.3d at 1382; *Idaho Sporting Cong. v. Thomas*,

19   137 F.3d 1146, 1154 (9th Cir. 1998). The Court here should vacate the ROD and require the

20   agencies to present accurate analyses to Secretary Jewell before she makes a new decision

21   whether to approve the Searchlight Wind project.

22   **III.**     **THE COURT SHOULD ISSUE A PERMANENT INJUNCTION**

23         In addition to, or as an alternative to, vacating the ROD, FEIS and BiOp and clarifying its

24   disposition of this case, the Court should issue a permanent injunction prohibiting any ground-

25   disturbing or species-disturbing activities associated with this project until BLM and USFWS

26   have issued the new evaluations this Court has ordered and the Secretary has issued a new ROD

27   for the project. Although this project has languished for nearly two years since the Secretary's

1    predecessor signed the ROD on March 13, 2013, the developer, Apex Wind Energy, has recently

2    announced that it has signed a Memorandum of Agreement with the Department of the Navy and

3    "aims to complete the [project] in 2016 or 2017." Ex. 3 at 6.

4         Despite this Court's grant of summary judgment in favor of plaintiffs on the

5    supplemental NEPA claim, and its order to the agencies to address a dozen significant failures to

6    consider and explain essential aspects of the biological evaulations of the project, the developer

7    appears intent on moving ahead with the project, and for completion to occur by 2016 the

8    construction would have to begin imminently. A permanent injunction is necessary to prevent

9    certain, irreparable harm if construction or operation of the project begins. In similar

10   circumstances, the Ninth Circuit endorsed a district court injunction halting construction of the

11   Elk Creek Dam after the Court of Appeals had ordered the federal agency to prepare a

12   supplemental EIS. *Marsh*, 52 F.3d at 1487 (citing *Or. Natural Res. Council v. Marsh*, 677 F.

13   Supp. 1072, 1078 (D. Or. 1987)); *see also Native Ecosystems Council v. Dombeck*, 304 F.3d 886,

14   902 (9th Cir. 2002) (reversing in part a district court grant of summary judgment in favor of

15   federal defendants on NEPA and ESA grounds and remanding for entry of injunction against

16   project construction "until the Forest Service complies with NEPA and the ESA").

17        **A.    Irreparable Harm.**

18        Environmental injury usually is irreparable injury. *High Sierra Hikers*, 390 F.3d at 642.

19   "In the NEPA context, irreparable injury flows from the failure to evaluate the environmental

20   impact of a major federal action." *Id.* "Environmental injury, by its nature, can seldom be

21   adequately remedied by money damages and is often permanent or at least of long duration,

22   *i.e.*, irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually

23   favor the issuance of an injunction to protect the environment." *Amoco Prod.*, 480 U.S. at 545.

24        In this case, injury to desert tortoises, bats, golden eagles, and other migratory birds is not

25   merely likely, but certain, if the project is allowed to proceed. Based on inaccurate nest surveys

26   that indicated two golden eagle nests approximately 10 miles from the project site, and relying

27   on data from Idaho showing foraging ranges of 2.8 miles during breeding season, the Bird and

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION
OF ORDER & AMENDMENT OF JUDGMENT

Bat Conservation Strategy—but not the FEIS text—estimated that about one golden eagle would be killed every five years. AR 3161, 3289. BLM failed to disclose and evaluate the 2011 nest survey data it commissioned showing that there are 28 nests within 10 miles of the site— including 19 within five miles of the site—and, based on that data and a new, Mojave-specific study showing that eagles forage as far as 32.3 miles from their nests during breeding season in this arid environment, eagle deaths from the Searchlight Wind project could be an order of magnitude greater than BLM estimated. Second Cashen Dec. ¶¶ 5–13. The area near Searchlight has the highest concentration of golden eagle nests in Nevada. *Id.* ¶ 9 & Atts. B & C. Given the perilous state of this species, an accurate analysis may lead Secretary Jewell to make a different decision about approving the rights-of-way for this project. *See* Ex. 4 at 1–2 (describing November 2014 BLM decision to reject 200 MW Silurian Valley solar project because of excessive impacts to desert tortoises and golden eagles).

In addition, in February 2015, a second golden eagle was killed at the only other wind energy project on BLM-administered land in Nevada, Spring Valley Wind, near Ely. Ex. 5. This is the second golden eagle killed in little more than two years of operation, at a facility with only 75 turbines in an area where the abundance of golden eagles is *low*, and where mortality of golden eagles was "expected to be a rare occurrence." Pls' Mot. SJ Ex. 9 at 5 (Dkt # 40-9). An injunction to prevent construction of the Searchlight Wind project, where golden eagle abundance is *high*, is warranted until the Secretary issues a new ROD based on the new environmental analysis.

The Court has recognized that injury to desert tortoises also will result from the blasting that would be the first stage of the construction of the project, as well as from the chronic noise from the turbines if it begins operation. Feb. 3, 2015 Order at 15; *see* First Cashen Dec. ¶¶ 14– 17, 27–28 (describing injury to tortoises from noise and blasting). These injuries will be of long duration, lasting the 30-year life span of the project, or permanent in the case of tortoises, bats and birds killed or injured by the project's construction or operations. *See* AR 3161, 3289, 4355, 4470, 4520, 4470, 4478–79, Pls' Mot. SJ Ex. 4 at 6, 8 (Dkt # 40-4) Pls' Mot. SJ Ex. 9 at 3,

Pls' Mot. SJ Ex. 10 (Dkt # 40-10) (documenting bird and bat deaths from industrial-scale wind energy facilities); *see* First Cashen Dec. Dec. ¶¶ 35–48, 59–60, 63–67. These injuries to tortoise, eagles, bats and other wildlife from the project's construction and operation in turn will injure the plaintiffs' interests in observing and seeking the preservation of these species in this unspoiled ecosystem. Bundorf Dec. ¶¶ 4–9 (Dkt # 41); Emmerich Dec. ¶¶ 8–19 (Dkt # 42); Ross Dec. ¶¶ 3–7 (Dkt # 43).

**B.     The Balance of Harms.**

When injury to the environment is sufficiently likely, "the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod.*, 480 U.S. at 545. In addition, when a project involves likely harm to a species listed as threatened under the ESA, "Congress has decided that under the ESA, the balance of hardships always tips sharply in favor of the endangered or threatened species." *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1035 (9th Cir. 2005); *see also Nat'l Wildlife Fed'n v. NMFS*, 422 F.3d 782, 796 (9th Cir. 2005) (in an ESA case challenging a biological opinion, "the balance has been struck in favor of affording endangered species the highest of priorities"). Moreover, the fact that Apex has voluntarily delayed moving forward on the project for two years since the ROD was signed, only beginning to accelerate the project *after* this Court's decision by signing the Memorandum of Agreement with the Navy, undercuts any claim that it would be harmed by an injunction. Ex. 3. As recently as November 2014, Apex asked BLM to allow it to make quarterly lease payments, instead of the annual lease payments required by FLPMA, "because it has not yet finalized an off-taker for the project and because of the lawsuit."[8] Ex. 6 at 2. This belies Apex's claim that it is this litigation—which has disclosed serious misstatements by its consultants regarding environmental impacts in the densest populations of desert tortoises and golden eagles in Nevada—that has

---

[8] An "off-take" agreement is "[a]n agreement between a producer of a resource and a buyer of a resource to purchase/sell portions of the producer's future production. *An offtake agreement is normally negotiated prior to the construction of a facility* such as a mine in order to secure a market for the future output of the facility." http://www.investopedia.com/terms/o/offtake-agreement.asp (last visited Feb. 27, 2015) (emphasis added).

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

caused the company to delay. The truth is that Apex and its predecessors, in the seven years
since the Searchlight Project was first proposed, has been unable to find a buyer for the small
amount of unreliable wind energy the project would generate. At the same time, the recent
announcement that Apex signed a curtailment agreement with the Department of the Navy
indicates that it fully intends to proceed with the project—warranting an injunction until the
approving agencies fully comply with NEPA and the ESA, and until the Secretary reviews and
issues a new decision whether to approve the project.

### C.   The Public Interest.

An injunction against ground-disturbing or species-disturbing activity until the agencies
prepare the additional analyses this Court has required, and until the Secretary issues a new
Record of Decision—which, given the significant and heretofore inadequately disclosed impacts
to tortoises and golden eagles from the project, could be a cancellation of the project—is in the
public interest. BLM's recent rejection of the 200 MW Silurian Valley solar project, Ex. 4,
illustrates that the public interest in ensuring protection of desert wildlife, particularly protected
species like the tortoise and eagles, is great. The Ninth Circuit has recognized "the well-
established 'public interest in preserving nature and avoiding irreparable environmental injury.'"
*Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1056 (9th Cir. 2010) (citation omitted).
Because Apex has never found a buyer for the power the Searchlight Project could generate, any
countervailing claim that there is a public interest in the power that the project might generate
fails.

There is no off-setting interest in supplying energy. First, the disproportionate impact this
wind energy facility would have on the highest concentrations of desert tortoises and golden
eagles in Nevada illustrates that this is not "clean" or "green" energy. Second, any benefit to the
public from additional sources of energy that adversely affect protected species is dissipated by
the fact that Searchlight Wind Energy has not found a buyer for the project's power in the seven
years since development began. This litigation has been going for less than two years, so
litigation is no explanation for this failure. When an energy generation project has no customers

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION
OF ORDER & AMENDMENT OF JUDGMENT

and no power purchase (off-take) agreement, there is no benefit to the public from its construction. The public's interest in the protection of desert tortoises, golden eagles—reflected in the statutes that protect them—and other wildlife outweighs any interest in what is still essentially speculative energy production.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion, vacate the ROD, FEIS, and BiOp and enter a permanent injunction prohibiting ground-disturbing or species-disturbing activities related to the Searchlight Wind project until the Secretary has issued a new ROD.

Respectfully submitted this 3rd day of March 2015.

| | |
|---|---|
| _____/s Donna M. Wittig_____ | _____/s David H. Becker_____ |
| Nevada Bar No. 11015 | DAVID H. BECKER, ESQ., _Pro Hac Vice_ |
| DONNA M. WITTIG, ESQ. | Oregon Bar No. 081507 |
| E-mail: dwittig@nevadafirm.com | E-mail: davebeckerlaw@gmail.com |
| HOLLEY, DRIGGS, WALCH, | LAW OFFICE OF DAVID H. BECKER, LLC |
| PUZEY & THOMPSON | 833 SE Main Street # 302 |
| 400 South Fourth Street, Third Floor | Portland, OR 97214 |
| Las Vegas, Nevada 89101 | Telephone: (503) 388-9160 |
| Telephone: (702) 791-0308 | |

_____/s Erin Madden_____
ERIN MADDEN, ESQ., _Pro Hac Vice_
Oregon Bar No. 044681
E-mail: erin.madden@gmail.com
CASCADIA LAW, P.C.
833 SE Main Street # 318
Portland, OR 97214
Telephone: (503) 753-1310
Fax: (503) 296-2973

Of Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR VACATUR, PERMANENT INJUNCTION, CLARIFICATION OF ORDER & AMENDMENT OF JUDGMENT

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b); LR 5-1

I certify that on the date indicated below, I filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which would provide notification and a copy of same to counsel of record.

Dated: March 3, 2015

          /s David H. Becker